It COOKS, J.
dissenting:
After initial examination, Decker alleges Dr. Kibler presented her with several treatment options to relieve her lower back pain associated with degenerative disc disease. She consented to him using the Logan Basic Technique, which involved placing her on her stomach and manipulating her spinal column by hand. Dr. Kibler continued to use the Logan technique from January 1988, at varying intervals, until September 20,1991. On this date, Decker alleges, Dr. Kibler placed her in a side posture position and adjusted her spine by placing his knee in the middle of her lower back and pushing while holding her head and legs with his hands. He then directed her to the opposite side posture position and continued treatment. It was at this time, Decker alleges she heard and felt an excruciating “pop.” Decker’s husband, who was present in the examination room, claims he too heard the “pop.”
According to Decker, she experienced immediate debilitating pain and she was unable to walk or stand up. The next day, she was examined by a physician who diagnosed she was suffering from a herniated disc, which required surgery. Although the surgery alleviated some of her pain, Decker still suffers occasional numbness in her | ¡.back and legs. She also experiences bowel and urinary problems. Her neurosurgeon confirmed:
When a chiropractor, or anyone else for that matter, manipulates the spine they are applying a load, a pressure or a vector force against the disc. If the disc is herniated or already degenerated, that may be the force that results in the herniation. It may be the final straw, so to speak ...
As the majority noted, plaintiff eventually filed suit in 1992 against Dr. Kibler claiming he negligently treated her on September 20, 1991, causing her to sustain a herniated disc or aggravating her preexisting disc condition. Defendants subsequently filed a motion for summary judgment. The motion was initially fixed for hearing on February 2,1998.. Both parties agreed to motion the court for a continuance of this date because of scheduling conflicts. The trial court granted the continuance but only after .the Deckers agreed to provide, within the next two weeks, the affidavits of their experts who would confirm that Dr. Kibler’s treatment fell below the standard of care. .
Because of the approaching Mardi Gras holiday, which fell on February 24, 1998, the Deckers were unable to finalize and file Dr. Katz’s and Dr. Richer’s affidavits within the period fixed. Again, as noted by the majority, the Deckers requested a continuance; but this time the trial judge denied the request. However, he granted the Deckers until 4:30 p.m. on the next day to file the affidavits.
To meet this deadline, the Deckers’ attorney decided to fax proposed affidavits to Richter and Katz at their offices in New Orleans for reading and signing. Because Dr. Katz was out of town escaping Mardi Gras and its aftermath, the Deckers were only able to obtain the affidavit of Dr. Richter. After numerous telephone conversations, the wording of Dr. Richter’s affidavit was' agreed upon and another draft was faxed to him for signature. The draft was signed and faxed back to the Attorney’s office dated February 27, 1998 and it was notarized by the attorney on the | asame date. A law clerk, employed by the Deckers’ attorney testified he hand delivered the affidavit to the Clerk of Court’s office on the same date, but because he made several trips to the Clerk’s office that day, he could not remember exactly to whom he handed the filing.
It is undisputed that a copy of the affidavit was mailed to Dr. Kibler’s attorney on the same date. Although the Clerk of Court could not say when the affidavit was filed with his office, he also could not declare it ivas not filed timely. He did not deny it may have been misplaced by his staff or filed in the dead section because the suit record was in the Judge’s chambers during the relevant period. The Deckers’ attorney also introduced all the *286 fax transmissions to verify their account of what happened, which included the facsimile affidavit signed by the doctor on February 27, along with telephone records verifying that numerous calls were placed to his office on the same date. The defense presented absolutely no evidence to dispute the Deckers’ attorney’s version. Even after the Deckers presented undisputed documentary evidence to support their version of what happened, the trial judge nonetheless focused only on what they could not produce, noting: “They remember specifically everything but who they gave it to so that we could somehow try to verify this.” The trial judge’s finding that Dr. Richter’s affidavit was not timely filed was based entirely on his apparent suspicion that the Deckers’ attorney and law clerk were lying-though he charitably characterized their recollection as “not accurate with respect to the details.” But, there were no conflicting details. Denial of plaintiffs’ motion for new trial, grounded in part on the “good cause” provision found in La.Code Civ. P. art 1973, entirely based on “mere suspicion” was manifestly wrong and constituted an abuse of the trial judge’s discretion. His ruling denied plaintiffs’ their day in court and exposed their attorney to a malpractice claim without a scintilla of evidence in the record suggesting he is an exaggerator, liar, or suffers from a severe aberration of mind.